UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

HUMBERTO RESTREPO, as
Chairman of the Joint Industry Board
of the Electrical Industry,

Petitioner,

-against-

CITI CONNECT, LLC,

Respondent.

**MEMORANDUM AND ORDER**
Case No. 23-CV-7191

*For the Petitioner:*
MAURA MOOSNICK
Virginia & Ambinder, LLP
40 Broad Street, 7th Floor
New York, NY 10004

*For the Respondent:*
NICHOLAS A. PASALIDES
Eckert Seamans Cherin & Mellott, LLC
10 Bank Street, Suite 700
White Plains, NY 10606

**BLOCK, Senior District Judge:**

Petitioner Humberto Restrepo, as Chairman of the Joint Industry Board of

the Electrical Industry ("Petitioner" or "the JIB") has petitioned to confirm an

arbitration award ("Award") pursuant to Section 502(a)(3) of the Employee

Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1132(a)(3), and Section

301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185.

Respondent Citi Connect, LLC ("Respondent" or "Citi Connect") opposes this

petition and moves to vacate the Award; the JIB filed a cross-motion to confirm it.

For the following reasons, the JIB's cross-motion to confirm is GRANTED, and

Respondent's motion to vacate is DENIED.

1

## Background

The following facts are drawn from the parties' petitions and the arbitration decision attached to each. The JIB is the administrator of various employee benefit multi-employer plans established and maintained pursuant to a collective bargaining agreement between Local Union No. 3 of the International Brotherhood of Electrical Workers, AFL-CIO ("Union"), and various employer associations and employers. In 2014, the Union and Respondent, a New York corporation, entered into a collective bargaining agreement for the period August 28, 2014, through May 5, 2016 (the "CBA").

The CBA required Citi Connect to make contributions to several employee benefit plans administered by the JIB (the "JIB Funds") in an amount based on the gross payroll of Citi Connect employees. After the CBA expired in May 2016, Citi Connect abided by its terms until June 2020. At that point, Citi Connect stopped contributing to the JIB Funds and implemented its final offer ("Final Offer") in the then-ongoing negotiations for a new CBA.

In August 2022, the JIB notified Citi Connect that an audit had found that Citi Connect underpaid the JIB Funds by approximately $420,000 for the period from January 2018 through December 2020. Pursuant to the CBA and the benefit plans' collections policy ("Collection Policy") and arbitration procedures, the JIB initiated arbitration, seeking these allegedly delinquent contributions. Arbitrator

2

Stephen F. O'Beirne (the "Arbitrator") held two days of hearings. Citi Connect

argued that it had no obligation to pay these contributions because the additional

employee payments at issue were not wages, but incentive bonuses, and thus not

subject to the CBA's employee benefit fund contribution terms. On August 7, 2023,

the Arbitrator issued his opinion and Award, rejecting this argument and finding

that Citi Connect had violated the CBA by underpaying its contribution

obligations. In his Award, the Arbitrator ordered Citi Connect to pay the JIB a total

of $548,191.81. The JIB now seeks enforcement of that Award, plus fees, costs,

and interest.

## Standard of Review

Enforcement of an arbitration award issued under a collective bargaining

agreement "is governed by section 301 of the LMRA." *Nat'l Football League*

*Mgmt. Council v. Nat'l Football League Players Ass'n*, 820 F.3d 527, 536 (2d Cir.

2016); 29 U.S.C. § 185. "[A] federal court's review of labor arbitration awards is

narrowly circumscribed and highly deferential—indeed, among the most

deferential in the law." *Id.* at 532; *see also Major League Baseball Players Ass'n v.*

*Garvey*, 532 U.S. 504, 509 (2001) ("Judicial review of a labor-arbitration decision

pursuant to [a CBA] is very limited."). The Court is "not authorized to review the

arbitrator's decision on the merits despite allegations that the decision rests on

factual errors or misinterprets the parties' agreement[] but [may] inquire only as to

3

whether the arbitrator acted within the scope of his authority as defined by the [CBA]." *Nat'l Football League*, 820 F.3d at 536.

The Court must enforce the arbitrator's award so long as it "'draws its essence from the [CBA]' and is not merely an exercise of the arbitrator's 'own brand of industrial justice.'" *Int'l Bhd. of Elec. Workers, Loc. 97 v. Niagara Mohawk Power Corp.*, 143 F.3d 704, 714 (2d Cir. 1998) (quoting *United Steelworkers v. Enter. Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)). "Accordingly, the Supreme Court has made clear that a reviewing court is bound by the arbitrator's factual findings, interpretation of the contract and suggested remedies." *Loc. 97, Int'l Bhd. of Elec. Workers v. Niagara Mohawk Power Corp.*, 196 F.3d 117, 124 (2d Cir. 1999) (citing *United Paperworkers Int'l Union v. Misco, Inc.*, 484 U.S. 29, 37–38 (1987)); *see also A&A Maint. Enter. v. Ramnarain*, 982 F.3d 864, 871 (2d Cir. 2020) (per curiam) (explaining the court should uphold an arbitrator's "reasonable interpretation" of a CBA).

The Court must defer to the Arbitrator's decision "as long as the arbitrator is even arguably . . . acting within the scope of his authority." *Misco*, 484 U.S. at 36. "The scope of authority of arbitrators generally depends on the intention of the parties to an arbitration, and is determined by the agreement or submission." *Loc. 1199, Drug, Hosp. & Health Care Emps. Union v. Brooks Drug Co.*, 956 F.2d 22, 25 (2d Cir. 1992).

"An arbitral decision rendered under the [LMRA] may be vacated if the arbitrator has exhibited a 'manifest disregard of law.'" *Chelsea Grand, LLC v. N.Y. Hotel & Motel Trades Council*, 729 F. App'x 33, 36 (2d Cir. 2018) (quoting *Westerbeke Corp. v. Daihatsu Motor Co.*, 304 F.3d 200, 208 (2d Cir. 2002)). To establish manifest disregard, a party "must show the arbitrator made 'something beyond and different from a mere error in the law or failure on the part of the arbitrators to understand or apply the law.'" *Id.* at 36 (*quoting Saxis S.S. Co. v. Multifacs Int'l Traders, Inc.*, 375 F.2d 577, 582 (2d Cir. 1967)).

## Discussion

Citi Connect makes two arguments as to why the Court should vacate the Award. First, Citi Connect argues that the Arbitrator did not have the authority to make the award. Second, Citi Connect argues that the Arbitrator manifestly disregarded the law in making the Award. In particular, Citi Connect argues that the Arbitrator misinterpreted the plain language of the CBA and misapplied the doctrine of laches.

### A.  Arbitrator's Lack of Authority

Citi Connect argues that the Arbitrator lacked the power to make the Award because its Final Offer to the Union in June 2020 contained a provision which "settle[d] and resolve[d] any and all outstanding disputes between the parties, whether known or unknown, based on any conduct or circumstances whatsoever

that occurred or existed prior to said acceptance[.]" Final Offer of June 16, 2020, at

¶ 7, ECF No. 28-7. Citi Connects points to an April 2021 agreement to settle an

unrelated grievance the Union had filed against Citi Connect (the "Settlement

Agreement"), in which the Union "acknowledged" the terms of the Final Offer. *See*

Resp't's Mem. Supp. Mot. Vacate, at 3, ECF No. 32-1; Settlement Agreement, ECF

No. 28-8. Because the Union had accepted this Final Offer by acknowledging it in

the Settlement Agreement, Citi Connect argues that both the JIB and Arbitrator

were bound by its terms, precluding the Arbitrator from rendering the Award.

This argument is unavailing. The Arbitrator had authority to resolve disputes

between the JIB and Citi Connect pursuant to the 2014–2016 CBA, the validity of

which neither party disputes. *See* Award, at 2, ECF No. 1-15 (explaining CBA's

incorporation of arbitration procedures). Additionally, Citi Connect raised these

specific contentions concerning the preclusive effect of the Final Offer as part of its

post-hearing submission to the Arbitrator on the question of whether Citi Connect

had underpaid JIB Contributions. *See* Resp't's Post-Hearing Brief, at 1, 5–6, ECF

No. 34-11. The scope of the Arbitrator's authority to resolve a particular question

turns on the parties' intention and their agreement or submission, *see Brooks Drug

Co.*, 956 F.2d at 25, and Citi Connect evinced an intention that he adjudicate this

question.

So empowered, the Arbitrator proceeded to consider and reject Citi Connect's contentions concerning the preclusive effect of the Final Offer. *See* Award at 9-10., The Arbitrator reasonably concluded that "[t]he JIB was not a party to either" the Final Offer or Settlement Agreement. *Id.* at 9. The Arbitrator observed that the Settlement Agreement was negotiated between the Union and Citi Connect to resolve a dispute over Citi Connect's FICA contributions, and "[t]he JIB has no connection whatsoever to FICA Payments." *Id.* at 10. Thus, the Arbitrator reasoned that the Settlement Agreement placed no limitation on the JIB's right to collect contributions as authorized by the CBA. *Id.*

Additionally, the Arbitrator noted that that the contribution language of the Final Offer itself was nearly identical to that in the CBA, substituting the term "gross hourly payroll" for "gross payroll." *Id.* Assuming arguendo that the Final Offer had any effect, the Arbitrator reasonably concluded that the Final Offer, like the CBA, "would require the Employer to make contributions on any bonuses" beyond an annual one. *Id.*

The Court therefore rejects Citi Connect's contention that the Arbitrator clearly exceeded his power in making the Award. The Arbitrator arguably acted within the scope of his authority as defined by the CBA and the parties' submissions, and proceeded to reasonably interpret the relevant language in the CBA, Final Offer, and Settlement Agreement.

### B. *Arbitrator's Manifest Disregard of Law*

Citi Connect also alleges that the Arbitrator manifestly disregarded the law in two respects: by ignoring the plain language of the CBA, and by misapplying the doctrine of laches.

In arguing the Arbitrator ignored the CBA's plain language, Citi Connect focuses on the Arbitrator's finding that the term "gross payroll" in the CBA included incentive bonuses. Citi Connect contends the Arbitrator misinterpreted this language and wrongly concluded that the CBA obliged Citi Connect to make benefit contributions on such bonus payments. Additionally, Citi Connect argues the Arbitrator did not properly consider the parties' course of dealing, which should have established that "gross payroll" did not include percentages of incentive bonuses.

These are exactly the types of questions of fact and contract interpretation to which the Arbitrator is entitled to considerable deference. *See Misco*, 484 U.S. at 36 ("[C]ourts are not authorized to reconsider the merits of an [arbitrator's] award even though the parties may allege that the award rests on errors of fact."); *Brooks Drug Co.*, 956 F.2d at 26 ("[The Court] is not to review the accuracy of the arbitrator's construction of the [given] clause. [The Court] need only determine whether he arguably was interpreting the [given] clause."). The Arbitrator previously considered Citi Connect's arguments concerning the proper

8

interpretation of this language and reasonably concluded it was "clear and unambiguous, requiring participating employers like [Citi Connect] to make employee benefit contributions based on the gross payroll of employees." Award, at 7. "Any doubt about the meaning and intent of that language is erased by the language of the Pension Plan trust agreement which provides a definition of gross payroll that includes bonuses, except annual bonuses." *Id.*

Citi Connect also argues the Arbitrator manifestly disregarded the law in misapplying the doctrine of laches. Citi Connect contends that the JIB unreasonably delayed notifying Citi Connect of the delinquent contributions, and that the Arbitrator should have found the doctrine of laches defense satisfied. The Arbitrator instead found "there is insufficient evidence in the record of this proceeding to show the JIB knew or should have known Respondent was underreporting and underpaying its contribution obligation." *Id.* at 10–11. The Arbitrator noted that "[t]he system utilized by the JIB is a self-reporting one" in which employers are trusted to submit accurate weekly payroll reports and contributions, and the JIB could not have been expected to identify Citi Connect's underpayments prior to its 2021 audit. *Id.* at 11.

Courts must afford considerable deference to arbitrators' findings and interpretations, including their analyses of respondents' laches defenses. *See, e.g.,* *Constr. Council 175 v. N.Y. Paving, Inc.*, 708 F. Supp. 3d 221, 226, 230 (E.D.N.Y.

2023) (confirming award in which arbitrator rejected laches argument and observed that delay in grieving the issue was understandable).

Such is this case. The Court "cannot reweigh the merits of the grievance submitted to the arbitrator" so long as his analysis was at least "barely colorable." *Rite Aid of N.Y., Inc. v. 1199 SEIU United Healthcare Workers East*, 704 Fed. App'x 11, 13 (2d Cir. 2017) (summary order) (quoting *Nat'l Football League*, 820 F.3d at 539).

*Attorneys' Fees and Interest*

The JIB also seeks attorneys' fees and costs. While Section 301 of the LMRA does not provide for attorneys' fees in an action to confirm an arbitrator's award, attorneys' fees and costs nevertheless "may be awarded if the parties contractually agreed as such." *Trs. of the N.Y. City Dist. Council of Carpenters Pension Fund v. ABBA Constr. LLC*, No. 22-CV-5699, 2022 WL 17555720, at *4 (S.D.N.Y. Dec. 9, 2022) (citing *McGuire v. Russell Miller, Inc.*, 1 F.3d 1306, 1313 (2d Cir. 1993)).

The administrators of the JIB Funds adopted a Collection Policy, incorporated by reference in the CBA, which provides that the JIB may collect attorneys' fees and costs in a legal action to collect unpaid contributions. *See* Collection Policy, at 3–4, ECF No. 1-5. The JIB is thus entitled to attorneys' fees and costs both by agreement of the parties and by Section 502(g) of ERISA, which

10

provides for such an award to a plan in any delinquent contribution action in its favor. *See* 29 U.S.C. § 1132(g)(2)(D).

The attorneys' fees and costs requested, totaling $2,554, are reasonable, and the rate billed in line with that in similar cases. *See, e.g.*, *Trs. of the N.Y. City Dist. Council of Carpenters Pension Fund v. All Aces Corp.*, No. 23-CV-9929, 2024 WL 1884701, at *5 (S.D.N.Y. Apr. 30, 2024). The Court awards the JIB $2,554 in attorneys' fees and costs, comprising the $2,077 reflected in its invoice and $477 in filing fees and charges incurred in this action. *See* Time Records, ECF No. 1-19.

The JIB also requests pre-judgment interest on the $548,191.91 Award, and post-judgment interest at the statutory rate. Post-judgment interest is mandatory on awards in civil cases as of the date of judgment at the rate set forth in 28 U.S.C. § 1961(a). *See Tru-Art Sign Co. v. Loc. 137 Sheet Metal Workers Int'l Ass'n*, 852 F.3d 217, 223 (2d Cir. 2017). Whether to award pre-judgment interest "in cases arising under federal law has in the absence of a statutory directive been placed in the sound discretion of the district courts." *Waterside Ocean Navigation Co. v. Int'l Navigation Ltd.*, 737 F.2d 150, 153–54 (2d Cir. 1984) (quoting *Lodges 743 & 1746, Int'l Ass'n of Machinists v. United Aircraft Corp.*, 534 F.2d 422, 446 (2d Cir. 1975)).

In exercising this discretion, courts in this circuit regularly grant pre-judgment interest when confirming arbitration awards under the LMRA. *See SEIU*

11

*v. Stone Park Assocs., LLC*, 326 F. Supp. 2d 550, 555 (S.D.N.Y. 2004) (collecting

cases). Workers should not have to bear the costs of an employer's meritless

refusal to abide by an arbitrator's decision. Thus, the JIB is entitled to pre-

judgment interest at the rate of 9% from the date of the Award, August 7, 2023, to

the date of the entry of this Order. *See id.* ("Because the LMRA is silent with

respect to a prejudgment interest rate, the 'common practice' among courts within

the Second Circuit is to grant interest at a rate of 9%, the rate of prejudgment

interest under New York State law.")

### Conclusion

For the foregoing reasons, Citi Connect's motion to vacate is DENIED, and

the JIB's cross-motion to confirm is GRANTED. The Arbitrator's Award is

confirmed in its entirety. The JIB is entitled to $548,191.81 pursuant to the Award,

plus pre-judgment interest on that sum accruing at the rate of 9% per annum from

August 7, 2023, to the date of the entry of this Order, plus $2,554 in attorneys' fees

and costs. Post-judgment interest will accrue from the date this Order is entered at

the rate set forth in 28 U.S.C. § 1961(a).

**SO ORDERED.**

　　　　　　　　　　　　　　　　　　 /S/ Frederic Block
　　　　　　　　　　　　　　　　　　FREDERIC BLOCK
　　　　　　　　　　　　　　　　　　Senior United States District Judge

Brooklyn, New York
November 14, 2024